ELLIS, Judge.
This is an appeal by plaintiff H & H Sewer Systems, Inc. from a summary judgment dismissing its suit.
On April 11, 1973, James C. Plato and Douglas W. Potts, doing business as South Coastal Construction Company of Baytown, Texas, entered into a contract for the construction of a sewer system with the Town of Campti. Two performance bonds, both issued by Summit Insurance Company of New York, were furnished by the contractors. Subsequently, the contractors defaulted, and Summit became liable on its bonds.
The bonds contained the following provisions:
“(1) Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner’s obligation thereunder, the Surety may remedy the default, or shall
(a) Complete the Contract in accordance with its terms and conditions or
(b) Obtain bid or bids for submission to Owner for completing the Contract in accordance with its terms and conditions, and upon determination by Owner and Surety of the lowest responsible bidder, arrange for a contract between such bidder and Owner and make available, as work progresses, sufficient funds to pay cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the penalty set forth in this instrument. The term ‘balance of the contract price’, as used herein, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.”
Summit elected to complete the contract in accordance with its terms and conditions, and, on November 15,1974, contracted with plaintiff to complete the job on a cost plus ten per cent basis.
On February 10,1975, plaintiff submitted its claim for $21,501.00 for work done during the preceding two weeks, and Summit did not pay. Thereafter, on May 28, 1975, Summit was placed in liquidation in New York.
Defendant Insurance Guaranty Association was subsequently notified by the Louisiana Insurance Commissioner of Summit’s insolvency, and Summit was placed in ancillary receivership in East Baton Rouge Parish, Louisiana.
Based on the foregoing facts, plaintiff alleges that the defendant Insurance Guaranty Association stands in the shoes of Summit for the payment of the obligation due to plaintiff.
R.S. 22:1380 provides:
“There is created a nonprofit unincorporated legal entity to be known as the Insurance Guaranty Association, whose domicile for purpose of suit shall be East Baton Rouge Parish, Louisiana. All insurers defined as member insurers in R.S. 22:1379 shall be and remain members of the association as a condition of their authority to transact insurance in this state. The association shall perform its *967 functions under a plan of operation established and approved under R.S. 22:1383 and shall exercise its powers through a board of directors established under R.S. 22:1381.”
R.S. 22:1382 provides, in part:
“(1) The association shall:
(a) Be obligated to the extent of the covered claims existing prior to the determination of the insurer’s insolvency, or arising after such determination but prior to the first to occur of the following events: (1) expiration of thirty days after the date of such determination of insolvency, (2) expiration of the policy, or (3) replacement or cancellation of the policy at the instance of the insured if he does so within thirty days of the determination, but such obligation shall include only that amount of each covered claim, except return premiums, which is in excess of one hundred dollars and is less than fifty thousand dollars, nor shall a claim for the portion of unearned premiums in excess of seven hundred and fifty dollars be allowed. Notwithstanding the foregoing, the association shall pay the full amount of any covered claim arising out of a workmen’s compensation policy. In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.
“(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.”
Under R.S. 22:1379(3) a covered claim is “ . . .an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. ‘Covered claim’ shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.”
Plaintiff contends that since Summit elected to complete the contract, under the provisions of the bonds, and thereby entered into a contract with plaintiff, its claim is one “arising out of” and “within the coverage” of the bonds, and is therefore a “covered claim.”
We think it clear that, if Summit were liable to plaintiff under the bonds, that the claim made by plaintiff would be a “covered claim” and the defendant association would be liable.
It is not contested by defendant that surety contracts are covered by R.S. 22:1375 et seq., the Insurance Guaranty Association Law. We also take note that the contract and bond in this case were entered into under the Public Works Act. Under R.S. 38:2241, all bonds written in connection with a public works contract must insure “the faithful performance of the contract with an additional obligation for the payment by the contractor or sub-contractor for all work done, labor performed, or material or supplies furnished” in connection with the job. All requirements of the Public Works Act relative to the bond are considered as part of the bond, regardless of the written terms thereof.
When Summit elected to complete the contract, it stepped into the shoes of the defaulted contractor, and its contract with plaintiff made plaintiff a subcontractor on the job. We do not think that, by becoming the contractor, the surety can then deny to its subcontractors the protection of the bond, which is guaranteed to them by the provisions of the Public Works Law.
We therefore hold that plaintiff’s claim is one arising out of and within the coverage of the bonds furnished by Summit and that defendant is therefore not entitled to summary judgment.
The judgment appealed from is therefore reversed and set aside, and the case re *968 manded to the trial court for further proceedings in accordance with law. Defendant shall pay all costs of this appeal. All other costs shall await final disposition on the merits.
REVERSED AND REMANDED.